UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TANYA Y. McKINNEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | ) Case No.: 1:15-cv-1555-DML-WTL |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## Decision on Judicial Review

Tanya Y. McKinney protectively filed for DIB and SSI on July 8, 2008—alleging disability since January 1, 2008—and the agency denied her claims initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision in February 2011, and the Appeals Council denied Ms. McKinney's request for review of this decision. Thereafter, Ms. McKinney appealed to the district court, which reversed the decision and remanded the case to the Commissioner for further proceedings. Ms. McKinney appeared and testified at a hearing and subsequent supplemental hearing held in May and October 2014 in Indianapolis. In November 2014, the ALJ denied Ms. McKinney's claims in a written decision; thereafter, the Appeals Council denied her request for review. Ms. McKinney now seeks judicial review of the Commissioner's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Finding that the ALJ's decision is supported by substantial evidence, this court affirms.

**Standard for Proving Disability**

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Ms. McKinney is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Social Security Administration ("SSA") has prescribed a "five-step sequential evaluation process" for determining disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[1]  The first step inquires as to whether the claimant is currently engaged in substantial gainful activity; if so, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c).  The third step is an analysis of whether the

---

[1] Because the regulations governing disability insurance benefits and supplemental security income are virtually identical, further citations throughout this decision will be made only to the Title II regulations covering disability insurance benefits, found at 20 C.F.R. § 404.1501 *et seq*.  The parallel supplemental security income regulations are found at 20 C.F.R. § 416.901 *et seq.*, corresponding to the last two digits of the disability insurance benefits citations (*e.g.*, 20 C.F.R § 404.1520 corresponds to 20 C.F.R. § 416.920).

claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity ("RFC") is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard of Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## The ALJ's Sequential Findings

Ms. McKinney was 32 years old at the time of the alleged disability onset date. She has a high school education and past relevant work experience as a lead teacher at a preschool, retail clerk, cashier, and housekeeper.

At step one, the ALJ found that Ms. McKinney had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. At step two, he identified numerous severe impairments, including residuals of pituitary

4

adenoma, conversion disorder, and borderline intellectual functioning. At step three, the ALJ found that none of the severe impairments, singly or in combination, met or medically equaled a listing.

The ALJ next determined that Ms. McKinney has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she:

- can lift, carry, push or pull twenty pounds occasionally and ten pounds frequently;

- is able to stand and walk six hours of an eight-hour workday, and sit for six hours of an eight-hour workday;

- can occasionally stoop, balance, crouch, kneel, crawl, and climb stairs or ramps;

- should not climb ladders, ropes, scaffolds or work around hazards such as unprotected height or unguarded moving machinery;

- is limited to work involving simple, repetitive tasks requiring no independent judgment on basic work processes. Work goals from day-to-day should be static and predictable; and

- should have only occasional, superficial contact with co-workers and the general public.

(Dkt. 14-9 at p. 16).

With this RFC and based on the ALJ's review of testimony of a vocational expert ("VE"), the ALJ found at step four that that Ms. McKinney is capable of performing past relevant work as a housekeeper. The ALJ also made alternative step five findings that—considering Ms. McKinney's age, education, work experience, and RFC—she is able to perform other jobs existing in significant

numbers in the national economy, including hand packager, equipment cleaner, and janitor.

## Analysis

Ms. McKinney argues first that the ALJ's determination that Ms. McKinney did not meet or medically equal listing § 12.05(c) is not supported by substantial evidence. Next, Ms. McKinney contends that the ALJ's step four and alternative step five findings that she is capable of performing her past work as a housekeeper as well as other jobs that exist in significant numbers in the national economy is not supported by substantial evidence. The court will consider each argument below.

**I.  The ALJ's determination that Ms. McKinney did not meet or medically equal Listing 12.05(c) was supported by substantial evidence.**

First, Ms. McKinney argues that the ALJ erred in determining at step three that her impairments did not meet or medically equal the criteria of Listing 12.05(c). At step three of the five-step sequential analysis, evidence demonstrating the claimant's impairments is compared to a list of impairments presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 416.920(a)(4)(iii) ("If you have an impairment that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled"); *see also Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). Where an impairment meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary. *Rice*, 384 F.3d at 365 (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(e)).

> Listing 12.05, *Intellectual disability*, provides in relevant part:
>
> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(c); *see also Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) ("[A] low IQ, but not an IQ below 60, is insufficient, even with the presence of some impairment, to establish disability per se on grounds of mental retardation. The reason is that persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job[.]")

Ms. McKinney now contends that the ALJ's determination that she did not meet Listing 12.05(c) is erroneous because *King v. Barnhart*, 2007 WL 968746 (S.D. Ind. Feb. 26, 2007), established that a claimant's special education classes before age 22 satisfied the requirement of deficits in adaptive functioning that manifest initially during the developmental period (*i.e.,* before age 22). See Dkt. 21 at p. 13. Here, there is evidence in the record that Ms. McKinney was in special education classes in high school; *King* is nonetheless distinguishable. In *King*, the claimant "satisfied the severity requirements of Listing 12.05(c) based on standardized IQ tests." *King*, 2007 WL 968746 at *3. Significantly, the doctor who performed the

evaluation at the request of the Commissioner's Disability Determination Bureau found that Mr. King's IQ scores were "accurate," and the ALJ did not question that finding.[2] *King*, 2007 WL 968746 at *3.

In Ms. McKinney's intellectual testing, conducted in July 2005 and June 2012, she achieved full scale IQ scores of 61 and 63 respectively—putting her within the IQ range set forth in 12.05(c)—but, as the ALJ wrote in his decision, "at the conclusion of each examination, Jerome Modlik, Psy.D., and Herbert Henry, Ph.D., concluded that the IQ scores were inconsistent with the claimant's adaptive function, which demonstrates higher intellectual function." (Dkt. 14-9 at p. 13). Specifically, throughout his psychological evaluation report, Dr. Modlik repeatedly questioned the results of the WAIS-III.[3] *See e.g.*, Dkt. 14-7 at p. 69 ("She was superficially cooperative with the examination, but I have very serious doubts about the validity of the WAIS-III."), p. 71 ("This woman's work history and independence is not consistent with these I.Q. scores. . . . Again, I have very serious doubts about the validity of these results."), p. 72 ("Tanya McKinney tests as functioning in the mentally retarded range of intellectual ability. I have the most serious doubts about these results and I suspect this WAIS-III is not valid. Again, her work history, possession of a driver's license, and independent functioning are not

---

[2] In *King*, the claimant had a verbal IQ of 64, a performance IQ of 81, and a full-scale IQ of 69. *King*, 2007 WL 968746 at *3.

[3] The Wechsler Adult Intelligence Scale (WAIS) is an IQ test designed to measure intelligence and cognitive ability in adults and older adolescents. *See* https://en.wikipedia.org/wiki/Wechsler_Adult_Intelligence_Scale (last visited Sept. 20, 2016).

consistent with these results.")  In Dr. Henry's summary of Ms. McKinney's mental status evaluation and WAIS-IV administration, he wrote:  "The claimant's WAIS-IV Full Scale IQ of 63 falls into the mild mental retardation range but her level of adjustment exceeds the level of adaptation characteristic for mildly mentally retarded individuals."  Dkt. 14-6 at p. 91.  The ALJ gave "great weight" to the opinions of the consultative examiners, Drs. Modlik and Henry, finding that "each assessment is based upon clinical examination and observation and [is] supported by clinical reports and the claimant's adaptive function."  Dkt. 14-9 at p. 14.

The validity of Ms. McKinney's IQ scores was also questioned by Joseph Cools, Ph.D. and John Davis, Ph.D., who testified as impartial medical experts at the May and October 2014 hearings, opining that "the claimant's daily activities and developmental history is inconsistent with the IQ scores notes in 2005 and 2012."  (Dkt. 14-9 at p. 14).  Specifically, Dr. Cools testified that her adaptive functioning is more indicative of a borderline intellectual functioning "probably in the mid-70 range[,]" particularly in light of factors such as her possession of a driver's license and work history.  Dkt. 14-9 at p. 55, 56 (Tr. of May 2014 hearing).  Dr. Davis testified at the October 2014 hearing in relevant part as follows:

> The issue about the IQ, I mean, just listening to her today from her vocabulary, her syntax, sentence structure and so forth that's not the example of mental retardation.  That's at least borderline intellectual functioning if not higher and then just reasoning you mentioning that she finished a course at a school there that's more consistent with at least low average intellectual functioning so I don't see any basis for finding any kind of mental retardation that would satisfy 12.05(c).

9

Dkt. 14-9 at p. 99 (Tr. of Oct. 2014 hearing).  The ALJ "assigned considerable weight to these opinions as each is congruent with findings reflected in consultative evaluation reports completed by examiners Modlik and Henry."  Dkt. 14-9 at p. 14.

The issue, then, is not whether Ms. McKinney's special education classes are sufficient to establish the requirement of onset of deficits in adaptive functioning before age 22; instead, the issue is whether she has deficits in adaptive functioning consistent with her low IQ scores.  *See Novy*, 497 F.3d at 710 ("The term ['deficits in adaptive functioning'] denotes inability to cope with the challenges of ordinary everyday life."); *see also Thackery v. Astrue*, 2013 WL 1319595 (S.D. Ind. March 29, 2013) (discussing case law relevant to the issue of deficits in adaptive functioning sufficient to meet the first requirement of Listing 12.05(c)).  The court finds that there is substantial evidence to support the ALJ's finding that Ms. McKinney's "Full Scale IQ scores do not reflect her developmental history or functional capacities as required under 20 CFR 404, Subpart P, App. 1 12.00(D)(6)(a)."  Dkt. 14-9 at p. 13. The record shows that Ms. McKinney independently manages her household, which includes two minor children, has a valid driver's license, and has a work history that includes three years as a lead teacher at a preschool.[4]  The court agrees with

---

[4] In light of this evidence of Ms. McKinney's considerable coping skills, this case is factually distinguishable from *Hendricks v. Astrue*, to which Ms. McKinney directs the court.  In that case, the record was "rife with examples of how Mr. Hendricks is unable to cope with the challenges of everyday life": the claimant "did not leave his house and relied on his wife for a number of daily tasks. . . [and] reported that 'he pretty much stays to himself and often is in his room listening to the radio or watching TV.'"  *See Hendricks v. Astrue*, 2009 WL 648610 at *7 (S.D. Ind. March 11, 2009).

the Commissioner that Ms. McKinney has not met her burden of proving deficits in adaptive functioning, as outlined in the introductory paragraph Listing 12.05, and the ALJ did not err in finding at step three that Ms. McKinney's intellectual impairment does not meet or medically equal the listing.

## II.     The ALJ's step four and alternative step five decisions are supported by substantial evidence.

Next, Ms. McKinney argues that the ALJ's step four decision must be reversed because it is contrary to Social Security Ruling 82-62, which requires that in finding that an individual has the capacity to perform a past relevant job, the determination or decision must also contain specific findings of fact as to the individual's RFC, the physical and mental demands of the past job/occupation, and that the individual's RFC would permit a return to her past job/occupation. *See* Dkt. 21 at p. 17 (citing SSR 82-62, located at https://www.ssa.gov/OP_Home/rulings/di/02/SSR82-62-di-02.html, last visited Sept. 26, 2016). With regard to the first of these—the RFC—Ms. McKinney argues that the ALJ ignored evidence that she had "mild retardation and a great difficulty completing full time work[,]" Dkt. 21 at p. 17, but Ms. McKinney points to no specific evidence of these impairments that the ALJ allegedly ignored. Nonetheless, the court notes that the ALJ in fact discussed at length Ms. McKinney's mental impairments throughout his decision. Moreover, the ALJ explained in his RFC discussion that the "restriction for light work activities accommodates residual effects of the pituitary adenoma (i.e. subjective reports of fatigue and occasionally dizzy spells)[,]" Dkt. 14-9 at p. 17, and that "[t]he postural and environmental

11

restrictions factor [in] symptoms and limitations associated with the pituitary tumor and conversion disorder (i.e. subjective weakness)." Dkt. 14-9 at p. 19. Thus, the ALJ adequately addressed Ms. McKinney's mental and physical impairments.

The court now turns to Ms. McKinney's assertions that the ALJ made no findings regarding the physical and mental demands of her past job of housekeeper—the "extent of walking and standing . . . [and] mental alertness," in particular, Dkt. 21 at p. 18—or a finding that Ms. McKinney's RFC would permit a return to her past job or occupation. In his hypotheticals to the VE at the May 2014 hearing, the ALJ characterized the work Ms. McKinney is capable of performing as "light exertional work," which included lifting or carrying, pushing or pulling 20 pounds occasionally and 10 pounds frequently; limits for walking and standing up to six hours a day; and simple, repetitive tasks that require no independent judgment.[5] Dkt. 14-9 at p. 64. The record thus shows that the ALJ accounted for Ms. McKinney's limitations with regard to walking, standing, and mental alertness.[6] The VE testified that Ms. McKinney's past work as a housekeeper

---

[5] In her disability reports to the agency, Ms. McKinney stated that the heaviest weight she lifted frequently as a housekeeper was 10 lbs. *See* Dkt. 14-6 at p. 27, 38. Accordingly, the VE at the May 2014 hearing stated that housekeeping is "medium work with an SVP of 2 making it unskilled but in the record she indicated she lifted only 10 pounds [which] would have placed it at the light level." Dkt. 14-9 at p. 64.

[6] Ms. McKinney also complains that the ALJ's RFC omitted her impaired vision preventing her from driving at night; given that there is no evidence to show that Ms. McKinney's housekeeping work (or the other occupations identified in step five by the VE) necessitates nighttime driving, the court finds that the ALJ did not err in not including this alleged limitation in the RFC.

accommodated these limitations, and the ALJ relied on this testimony in making his step four finding that Ms. McKinney is capable of performing past relevant work as a housekeeper.

Finally, Ms. McKinney argues that the ALJ erred in omitting restrictions for moderate impairments in concentration, persistence, or pace in his hypothetical questions to the VE, citing as support *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). Ms. McKinney does not point to any evidence in the record of these moderate impairments aside from a specific page of the ALJ's decision, which includes the following sentence in the context of the ALJ's step three "paragraph B" analysis: "With regard to concentration, persistence or pace, the claimant has moderate difficulties." Dkt. 14-9 at p. 15. The ALJ does not cite to any source for this statement.[7] But at the conclusion of the particular section of the ALJ's

---

[7] The remainder of the paragraph—which reads in relevant part as follows—does not exactly support the statement:

> During consultative evaluations conducted in July 2005 and June 2012, the claimant was fully oriented with no evidence of a thought disorder. Her attention, concentration, and memory were intact. The claimant's judgment, insight, and fund of information were normal. . . . At the conclusion of the evaluations, the examiners assigned a global assessment of functioning score of "63" and "65" respectively. These scores are generally consistent with mild to moderate psychological impairment Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-VI) at 34. I gave great weight to findings reflected in the consultative evaluations, as each is consistent with the results of mental status testing. Moreover, the consultative evaluations are congruent with the opinion of a former treating clinician, who also noted moderate psychological impairment (Exhibit 15F at 16).

Dkt. 14-9 at p. 16.

decision that contains this statement regarding concentration, persistence or pace, the ALJ specifically clarifies that the limitations identified above are *not* part of the RFC assessment:

> The limitations identified in the 'paragraph B' and 'paragraph C' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . . Accordingly, I have translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

Dkt. 14-9 at p. 16.

In the RFC assessment portion of the ALJ's decision—which was not addressed by Ms. McKinney—the ALJ explained that a restriction for simple, repetitive tasks took into account her cognitive disorder. Dkt. 14-9 at p. 17. He further explained:

> Her daily activities demonstrate a mental capacity to understand, remember, and follow instructions in the context of performing simple, repetitive tasks. The claimant . . . has a valid driver's license and drives to errands and appointments. The claimant[] shops and independently handles personal finances. . . . *Her recreational activities further illustrate a capacity to maintain attention and concentration*. The claimant watches television, socializes with friends, and attends church regularly. *She reported no difficulty in carrying out these activities, which require adequate cognitive function and sustained attention, persistence, and pace*.

Dkt. 14-9 at p. 17 (emphasis added). The ALJ also found as part of his RFC analysis:

> With regard to psychological residual functional capacity, I assigned considerable weight to the opinion of State agency consultants who generally opined that the claimant has no significant limitation in her capacity to understand, remember, and carry out simple instructions,

sustain attention and concentration for simple instructions, maintain appropriate social interaction in the workplace, and adapt to change . . . .

Dkt. 14-9 at p. 19. In the context of the RFC analysis, in other words, the ALJ did *not* find that Ms. McKinney had limitations with regard to concentration, persistence, and pace. There is no *O'Connor-Spinner* issue presented by these facts.

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Ms. McKinney is not disabled.

So ORDERED.

Dated: 9/26/16

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system